UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES EDWARD
BROWN,

        Plaintiff,

v.

CITY OF DETROIT, *et al.*,

        Defendants.

_____/

Case No. 2:19-cv-12811
District Judge Sean F. Cox
Magistrate Judge Anthony P. Patti

# **OPINION AND ORDER DENYING IN PART, GRANTING IN PART & GRANTING AS UNOPPOSED IN PART PLAINTIFF'S MOTION FOR ORDER COMPELLING PRODUCTION OF DOCUMENT (ECF No. 14)**

**I.**    **OPINION**

    **A.**    **Background**

As set forth in both the original and amended complaints, this case stems from the alleged events of June 27, 2019. (ECF No. 1, PageID.2 ¶ 8; ECF No. 15, PageID.125 ¶ 8.) Plaintiff filed his initial discovery motion on December 11, 2019. This motion concerned his October 24, 2019 request for production of documents and interrogatories. (ECF No. 7, PageID.36-41.)

On December 13, 2019, while Plaintiff's initial discovery motion was under review, Plaintiff served a second request for production of documents, which sought, *inter alia*, the "Detroit Police Department Supervisory Investigation Report

of the Use of Force/Detainee Injury prepared regarding James Edward Brown." (ECF No. 14-1, PageID.102 ¶ 7.)

Defendant City of Detroit's January 6, 2020 response to Plaintiff's initial discovery motion represented that "Defendant has now supplied all available non-privileged[,] documents, however this is still an on-going investigation with documents that are unavailable so as not to compromise the investigation." (ECF No. 12, PageID.67 ¶ 8.) Three days later, on January 9, 2020, the Court deemed moot the initial discovery motion.

### B. Instant motion

On January 20, 2020, Plaintiffs filed the instant motion to compel, which seeks a Court order requiring Defendant City of Detroit "to produce the Detroit Police Department Supervisory Investigation Report of the Use of Force/Detainee Injury prepared regarding James Edward Brown." (ECF No. 14, PageID.88 ¶ A.) Alternatively, Plaintiff requests an *in camera* review of the report "to determine whether or not it is privileged." (ECF No. 14, PageID.88 ¶ B.)

Judge Cox referred this motion to me for hearing and determination, after which the parties stipulated to an *in camera* review of the document in question. (ECF Nos. 18, 20.) On or about January 28, 2020, copies of the 13-page force investigation file and a privilege log were delivered to chambers. Defendant City of Detroit filed a response on February 3, 2020. (ECF No. 21.)

2

C. **Discussion**

The privilege log identifies the material to be withheld or redacted as "Issues and Discrepancies." Consistently, the City of Detroit's motion response contends that "Plaintiff would not be entitled to the evaluative section of the report as stated in the privilege log . . . ." (ECF No. 21, PageID.147 (emphasis added).) Thus, it is clear that Defendant City of Detroit only seeks to withhold or redact a limited portion of the report on the basis of the "Law Enforcement Investigatory Privilege" and/or "Executive or Deliberative Process Privilege."

1. **Deliberative Process Privilege**

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1974). "The primary purpose served by the deliberative process privilege is to encourage candid communications between subordinates and superiors." *Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 939 (6th Cir. 1988). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' . . . by protecting open and frank discussion among those who make them within the government." *Dep't of Interior*

*& Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001).

The privilege, however, is not absolute and is narrowly construed. *Gen. Motors Corp. v. United States*, No. 07-14464, 2009 WL 5171807, at *1 (E.D. Mich. Dec. 23, 2009) (Roberts, J.). Here, I am informed by an oft-cited decision which reflects upon "sources of confusion in analysis of assertions of privilege by law enforcement agencies," in part, as follows:

> Similarly, courts could apply the "deliberative process" privilege to most kinds of information generated by police departments only if they are willing to stretch, in some instances almost beyond recognition, the policy rationale that supports that privilege. As originally developed, the deliberative process privilege was designed to help preserve the vigor and creativity of the process by which government agencies formulate important public *policies. See, e.g., Branch v. Phillips Petroleum Co.,* 638 F.2d 873, 881–82 (5th Cir.1981). The principal idea that inspires the privilege is that the people who contribute to *policy* formulation will be less afraid to offer honest (albeit painful) analyses of current and contemplated policies, and will be less shy about suggesting bold, creative (and sometimes hairbrained) policy alternatives, if they know that their work is not likely to be disclosed to the public. As I will suggest below, it is not at all clear to me that the basic assumption that informs this body of law is well-made. For present purposes, however, the point is this: the rationale that supports this privilege should fix the limits of its reach. The "deliberative process" privilege should be available only to communications that contribute to a deliberative process.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 658–59 (N.D. Cal. 1987) (Brazil, M.J.) (emphases in original). In addition, as described more recently by our Court of Appeals:

> To come within [the] deliberative process privilege, a document must be both "predecisional," meaning it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "deliberative," the result of the consultative process. Although this privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of the agency, the key issue in applying this exception is whether disclosure of the materials would expose an agency's decision-making process in such a way as to discourage discussion within the agency.

*Rugiero v. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir. 2001) (internal quotations and citations omitted).

### 2. Law Enforcement Privilege

The law enforcement privilege preserves the government's ability to "withhold from disclosure the identity of persons who furnish to law enforcement personnel information concerning violations of the law." *Holman v. Cayce*, 873 F.2d 944, 946 (6th Cir. 1989) (citing *Roviaro v. United States*, 353 U.S. 53, 59 (1957) and 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2019 (1970)).

### 3. Conclusion

To be sure, the moving and responding parties do not robustly explain or support their arguments. In fact, Plaintiff's motion brief argument, which is strikingly similar to the argument portion of his initial discovery motion, simply cites Fed. R. Civ. P. 37(a)(3)(B) and the non-binding decision in *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281 (10th Cir. 2005). (*Compare* ECF No. 12,

PageID.32-33, *with* ECF No. 14, PageID.94-95.) Equally as anemic on analysis is the City of Detroit's response brief argument, which: (1) cryptically cites *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987); (2) additionally cites *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973); and, (3) closes with a conclusory statement that application of these factors protects "the evaluative section of the report" from disclosure to Plaintiff. (ECF No. 21, PageID.147.)

It would have been more helpful to the Court if Plaintiff's motion brief argued, *e.g.*, that Defendant City of Detroit's assertion of privilege does not comport with Fed. R. Civ. P. 26(b)(5) ("*Claiming Privilege or Protecting Trial-Preparation Materials.*"), and if Defendant City of Detroit's response brief explained, *e.g.*, how either of the two asserted privileges applies to the material sought to be protected. Nonetheless, the Undersigned has reviewed the "Issues and Discrepancies" portion of the report and concludes that, at least, the Executive or Deliberative Process Privilege applies to most of this limited portion of the report.

**II. ORDER**

In sum, Plaintiff's motion for an order compelling production of document (ECF No. 14) is:

- **DENIED** as to the Force Investigation File's "Issues and Discrepancies" section, but only as to the 5 textual paragraphs; and,

- **GRANTED** as to the *list* of attachments within the "Issues and Discrepancies" section, as the list, itself, does not contain deliberative content and simply identifies supporting items; and,

6

The motion is **GRANTED AS UNOPPOSED** as to the remainder of the report. Alternatively, even if opposed, the Court finds that, other than the textual paragraphs within the "Issues and Discrepancies" portion, the other sections of the report are purely factual in nature and contain no "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N.L.R.B.*, 421 U.S. at 150. Additionally, Defendant has failed to provide a basis for the law enforcement privilege or to even hint at the existence of a confidential informant whose identity might require redaction.[1]

Within **ten (10) days** of the date of this order, Defendant City of Detroit shall provide Plaintiff with a copy of the Force Investigation File, redacting only the textual portions of the "Issues and Discrepancies" section.

**IT IS SO ORDERED.**

---

[1] The only witness identified in the report is an eye-witness bystander, whose identity: (1) was likely disclosed to Plaintiff as "an individual likely to have discoverable information" at the initial disclosure phase of this civil action, Fed. R. Civ. P. 26(a)(1)(A)(i); and, (2) would easily be ascertainable to Plaintiff through some casual gumshoeing. The Court views this no differently than disclosure of the witnesses contained in an auto accident report, and Defendant makes no showing of a need to protect against the use of a civil proceeding to make an end-run around criminal discovery procedures. Nor does Defendant give any indication of what stage a criminal prosecution, if any, might be in at present. This is consistent with the Plaintiff's repeated allegations that criminal charges were dropped and that he was released from jail. (*See* ECF Nos 1 and 15, ¶¶ 26, 35.)

Dated: February 11, 2020

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE